189 So.2d 764

William R. STRICKLAND

v.

STATE.

6 Div. 54.

Court of Appeals of Alabama.

May 4, 1965.

Rehearing Denied June 1, 1965.

Reversed after Remandment May 10, 1966.

Rehearing Denied June 7, 1966.

Olin W. Zeanah, Tuscaloosa, for appellant.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

CATES, Judge.

Strickland appeals the denial of coram nobis by the Circuit Court of Tuscaloosa County.

His principal complaint is that he was denied effective assistance of counsel while indigent.

In 1961, while in the Tuscaloosa County jail waiting to be transported to the penitentiary, Strickland escaped. He was indicted by the Tuscaloosa County grand jury for the offense denounced by Code 1940, T. 14, § 153, as amended, which reads:

"Any convict who escapes or attempts to escape from the penitentiary, or from any person or guard having him in charge under authority of law, either within or outside the walls of the penitentiary before the expiration of the term for which he was sentenced, shall, on conviction be imprisoned for an additional term of not less than one year."

According to the record before us, based on the bench notes of the late Honorable Reuben Wright, then Presiding Judge of the Tuscaloosa Circuit, Strickland, on arraignment, was asked if he wanted counsel and the bench notes affirmatively show that he said, in effect, that he would arrange for his own lawyer by the time for trial.

However, when the trial did come up, Strickland appeared without a lawyer and changed his plea from not guilty to guilty and received a four-year sentence on conviction by the court without the intervention of a jury.

We consider that reversible error was committed in accepting this change of plea without first showing that there was again an intelligent waiver of counsel. The offense denounced is of very doubtful [1] application to a prisoner who has not been taken into the penitentiary system within the meaning of our law which allows him no credit for obedience to the sentence until he is in the warden's custody. Being merely in the jail waiting for the penitentiary transportation agent gives no such credit.

In Rice v. Olsen, 324 U.S. 786, at 788, 65 S.Ct. 989, at 991, 89 L.Ed. 1367, we find:

"A defendant who pleads guilty is entitled to the benefit of counsel, and a request for counsel is not necessary."

Both this court and the Supreme Court of Alabama have had occasion to consider the retrospectivity of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. Barnes v. State, 42 Ala.App. 504, 169 So.2d 313; Brown v. State, 277 Ala. 353, 170 So. 2d 504.

In Commonwealth ex rel. O'Lock v. Rundle, 415 Pa. 515, 204 A.2d 439, the Supreme Court of that state, we think correctly, applied the *Gideon* principle to a plea

of guilty. In view of the necessity of an affirmative disclosure in the conviction record under the original indictment as exemplified in Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70, the burden of showing waiver in the absence of counsel for an indigent felony defendant is cast upon the State rather than the petitioner even in a post conviction proceeding.

Here, while it can be fairly said that Strickland waived the appointment of counsel on his original arraignment, nevertheless the next critical step leading to his conviction was when he changed his plea to guilty.

The record before us is completely blank as to whether or not Judge Warren, who was presiding at the time of Strickland's second appearance, made further enquiry as to his indigency and non-accompaniment by counsel. See Palumbo v. State of New Jersey, 3 Cir. 334 F.2d 524, and the dissenting opinion of Bell, J., in Post v. Boles, 4 Cir., 332 F.2d 738.

Reversed and remanded.

JOHNSON, J., dissents.

On Remandment

CATES, Judge:

After the Supreme Court of Alabama remanded this cause (Sept. 30, 1965, 189 So. 2d 771), the United States Court of Appeals issued its opinion in Davis v. Holman, 5 Cir., 354 F.2d 773.

This latter case was a reversal of a judgment denying habeas corpus and remanding Davis to Holman's custody. 237 F. Supp. 490.

The Attorney General filed a petition for certiorari with the Supreme Court of the United States seeking review of the Fifth

---

1. Contrast Bradford v. State, 146 Ala. 150, 41 So. 471 (Anderson, J., for a unanimous court), with Bradford v. State, 149 Ala. 1, 42 So. 990 (Tyson, C. J., for the court, Anderson and McClellan, JJ., dissenting). These two cases have never been reconciled.

Circuit. Among the purported questions posed to the United States Supreme Court was the conflict between the Supreme Court of Alabama in the instant case and the Fifth Circuit in Davis v. Holman, 354 F.2d 773. The petition was denied without opinion April 18, 1966, 86 S.Ct. 1343.

Davis, on its facts, we consider less clear cut in the prisoner's favor than Strickland. Davis had waived counsel intelligently (so all courts have assumed) and had descended into the jaws of jeopardy when he changed his plea to guilty—as an alternative to verdict. We saw this merely as a trial tactic and affirmed without opinion. Davis v. State, 42 Ala.App. 693, 165 So.2d 917. See Adkins v. State, 40 Ala.App. 87, 109 So.2d 747.

Our Supreme Court has said, "But we are not bound by the decisions of any federal court * * * other than the Supreme Court of the United States, * * *" Sanders v. State, 278 Ala. 453, 179 So.2d 35. See also Stock v. Plunkett, 181 Cal. 193, 183 P. 657; People v. Estrada, 234 Cal.App. 2d 136, 44 Cal.Rptr. 165.

"It should be emphasized that the above clause, 'and the Judges in every State shall be bound thereby' is the reason that every judge in every state is required to take the oath of office that is prescribed by the last paragraph of said Article. This clause contemplates that cases within the judicial cognizance of the United States, not only might, but would arise in the state courts, in the ordinary procedures. The obligation of the clause 'is imperative upon the state judges in their official * * * capacities.' They are not to decide merely according to state laws or Constitution, but according to the Constitution, laws and treaties of the United States—'the supreme law of the land.' Compare Martin v. Hunter's Lessee, 1 Wheat. 304, 340, 4 L.Ed. 97; 21 C.J.S., Courts, § 206, n. 49, pages 365, 372." State ex rel. Irvine v. District Court, 125 Mont. 398, 239 P.2d 272.

We now have a decision (albeit not squarely on the merits) of the Supreme Court of the United States in the *Davis* case, 86 S.Ct. 1343. Bland v. Holman, 5 Cir., 356 F.2d 8 (cert. den. Alabama v. Bland, March 21, 1966, 86 S.Ct. 1203, is of like import. In Thomas v. State 277 Ala. 570, 173 So.2d 111, we find Lawson, J., saying:

" * * * this court is not bound to follow federal courts on federal questions except the Supreme Court of the United States, but to ignore the consistent holdings of those courts on this question, which holdings have not been disturbed by the Supreme Court of the United States; although efforts have been made to have it overturn those holdings, can only lead to further delay in bringing about the punishment of those guilty of violating the laws of this state."

■ Accordingly, we consider the Supremacy Clause of the Federal Constitution, Art. 6, cl. 2, requires that our original judgment be reinstated. See separate opinion in Knox v. State, 42 Ala.App. 578, at 586, 172 So.2d 787, at 794.

Reversed and remanded.

On Rehearing after Remandment

The Attorney General would have us withdraw our last opinion and judgment for two reasons.

■ *First,* he would have us treat Davis v. Holman, op. cit., supra, as being solely Davis's case. The denial of certiorari by the Supreme Court of the United States is not a decision on the merits. See House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739; Louisville & N. R. Co. v. Bayles, 275 Ala. 206, 153 So.2d 639.

With this generalization we agree in theory. Practically, however, we know that the Fifth Circuit has considered the law of case in its decision in *Davis*.

Though the Attorney General may want to tilt at windmills, we prefer a less quixotic

role. We see no reason why the only adjustments in our legal structure must come from on high.

Along with *Bland* and *Davis,* we think the operative law—which opens or shuts prison doors—is settled. Morrison v. State, 258 Ala. 410, 63 So.2d 346. The taxpayers should be spared the cost of further jousting.

*Second,* the State suggests—dehors the record—that Strickland completed his sentence April 3, 1966, and dismissed an action for habeas corpus in the United States District Court for the Middle District of Alabama.

■ There are two reasons to reject this ground. One, review of coram nobis on appeal is on the basis of the record annexed to the judgment under review.

■ Strickland first filed in July, 1963, and had a hearing in March, 1964. Hence, his release in 1966 is not before this appellate court.

Two, the Attorney General mistakes the nature and purpose of the writ of error coram nobis.

■ Analyzing the result of a judgment of conviction beyond the immediate consequence of incarceration (or mulcting or both), we note the following incidental consequences:

1. The loss of political and civil rights, e. g.,

a) Code 1940, T. 17, § 16, provides:

"Any person who is disqualified from voting by reason of conviction of any of the offenses mentioned in section 15 of this title, except treason and impeachment, whether the conviction was had in a state or federal court, and who has been pardoned, may be restored to his or her citizenship with right to vote by the state board of pardons and paroles when specifically expressed in the pardon."

b) Constitution 1901, § 60, provides:

"No person convicted of embezzlement of the public money, bribery, perjury, or other infamous crime, shall be eligible to the legislature, or capable of holding any office of trust or profit in this state."

2. The legal consequence of a pardon's implying guilt, whereas coram nobis (at least where there is a breach of right to counsel) can lead to expunging conviction, ab initio. Mason v. State, 39 Ala.App. 1, 103 So.2d 337; Lyons v. Goldstein, 290 N.Y. 19, 47 N.E.2d 425, 146 A.L.R. 1422; State v. Lindsey, 231 Ind. 126, 106 N.E. 2d 230.

3. Restrictive statutes and ordinances applying to ex-convicts, e. g., Code 1940, T. 14, § 174. *Mason,* supra, aff'd 267 Ala. 507, 103 So.2d 341 (pardon is forgiving, not forgetting) ; Lambert v. People of State of California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228; Birmingham City Code §§ 42–1–42–6, incl.; Montgomery City Code, §§ 33–1–33–6, incl.

4. Punishment for some crimes can depend on whether or not the conviction is a second or subsequent one for the same offense, e. g., liquor and narcotics offenses.

5. Multiple or habitual offender laws in some states adapt the principle of geometric progression to punishment of recidivists. See People v. Richetti, 302 N.Y. 290, 97 N.E.2d 908.

We think United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 is a sound expression of the ramifications of coram nobis as we have received it at common law. There the lower court, 2 Cir., 202 F.2d 67, per Augustus Hand, J., said:

"In 1939 Robert Morgan pleaded guilty and was sentenced in the Northern District of New York to four years imprisonment on each of the eight counts in an indictment involving the theft of three letters from the United States mail. He served the time under these sentences,

which ran concurrently. In 1950 he was convicted in the County Court of Onondaga County, New York, and was sentenced as a second offender to serve from seven to ten years. New York Penal Law § 1941. He is currently confined in Attica Prison, Attica, New York, pursuant to that sentence. On February 11, 1952, application was made to the District Court for the Northern District of New York for a common law writ of error coram nobis, seeking an order vacating and setting aside his conviction in that court on the ground that he was not given the assistance of counsel and did not waive his constitutional right to such assistance. If his federal conviction were set aside he would presumably be entitled to be resentenced in the New York court as a first offender. \* \* \*

\*      \*      \*      \*      \*      \*

"\* \* \* If Morgan can establish that he was deprived of his common law right to be represented by counsel at the trial in the Northern District and he in no way waived that right, there would be a proper case for allowing a writ of error coram nobis, since such a denial is an error of fundamental character rendering the trial invalid. See United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129. Judge Brennan's order dismissing his application should accordingly be reversed."

The Supreme Court affirmed, Reed, J., concluding (346 U.S. 502, 512, 74 S.Ct. 247, 253):

"Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected. As the power to remedy an invalid sentence exists, we think, respondent is entitled to an opportunity to attempt to show that this conviction was invalid."

See also Anno. 1 L.Ed.2d 1876, § 7, and cases there cited.

We think the reasons ascribed in *Morgan* supra, outweigh the conclusory opinion in Browning v. State, Okl.Cr.App., 337 P.2d 755, particularly since the cases cited in the *Browning* opinion afford but tenuous parallels.

State v. Huffman, 207 Or. 372, 297 P. 2d 831, by a divided court, seems to have been reconsidered in State v. Endsley, 214 Or. 537, 331 P.2d 338. See Greene, The Oregon Approach to Post Conviction Relief, 27 Ohio State Law Journal 274, 276–277.

The general line of reasoning in *Huffman* is in accord with that in *Morgan,* though some difficulty presented itself to the Oregon court as to the practicality of the sort of judgment which might be entered in the trial court.

The Florida District Court of Appeals, in McCormick v. State, 164 So.2d 557, recognizes the rule of the *Morgan* case in coram nobis though not applying it under Criminal Rule 1, F.S.A., ch. 924, Appendix.

We are in no position to speculate as to what occurs when this cause returns to the Tuscaloosa Circuit Court.

■ The appellant may dismiss his suit for the writ. Should he persist, then he is due to be rearraigned. State ex rel. Lopez v. Killigrew, 202 Ind. 397, 174 N.E. 808, 74 A.L.R. 631. If he then pleads not guilty and is acquitted, he stands justified as wholly innocent of the charge.

Should he be reconvicted, it would seem that on allocutus (and before being resentenced) he should, as in the case of pardon, inform the court that he has obeyed and endured its former sentence and been discharged from custody of the penitentiary. This is in the nature of a motion in arrest of judgment. iv. Bl.Com. 375; Clellans v. Commonwealth, 8 Barr, Pa., 223; Sanders v. State, 129 Ala. 69, 29 So. 841.

On principles of elementary justice, we do not consider that upon such reconviction that the court's judgment could extend beyond a notation of the prior con-

finement and execution for costs, if any, as appropriate.

The opinion of the Supreme Court of Indiana in State ex rel. Lopez v. Killigrew, supra, is apropos:

"We see no reason why one who obtains a new trial by a writ of error *coram nobis* does not waive his constitutional protection against second jeopardy just as effectively as one who obtains a new trial by the more common procedure. Nor do we think it is material that the relator in this case has paid the fine of $10 and served the thirty days in jail. In Jeffries v. State (1867), 40 Ala. 381, the defendants secured a reversal of sentence and judgment, but after they had served several months of their term of imprisonment. When arraigned on the second trial they pleaded former conviction. After stating the general rule that one who procures a reversal of his conviction 'waives his constitutional immunity against being a second time placed in jeopardy,' Walker, C. J., continues:

" 'The fact that the prisoner had suffered a portion of the prescribed imprisonment, before the reversal of this case, cannot change the principle. The failure of the court to delay the punishment, pending the proceedings in the supreme court, may give the prisoner a strong claim on the executive clemency, for a reduction of the period of imprisonment; but it does not present any legal bar to another trial, after he has procured a reversal.'

\*     \*     \*     \*     \*     \*

"Since we conclude that the legal consequence of granting a writ of error *coram nobis* is to place 'the parties in the same position as if no trial had been had,' it follows that if the criminal court of Lake County, after a hearing on the merits of relator's petition, should grant a writ of error *coram nobis*, the relator will not be able, in the new trial, to get

any advantage from the fact that he has discharged the judgment of the original trial. Neither the law, nor the relator by his conduct, can wipe out the fact that he has been tried and convicted, and has suffered the punishment imposed as a result of his conviction. But there is no inherent difficulty in avoiding or changing the legal consequences that ordinarily attend that fact. The state must accept the legal consequence that one who has suffered punishment, even under a void judgment, cannot be compelled to undergo a second punishment for the same offense. But there is no greater legal difficulty in allowing the relator to avoid the legal consequences of having suffered punishment than there would have been in allowing him to avoid the legal consequences of having been tried, convicted, and sentenced. In both cases the avoidance of legal consequences would rest upon the desire and consent of the relator, and he must be considered as consenting to an avoidance of all legal consequences of his former trial, including the legal consequences of having discharged the judgment. We are not unfamiliar with situations in which one may, in fact, suffer punishment twice for the same act. In many states one who manufactures intoxicating liquor is subject to prosecution and punishment both by the state and by the United States. In this situation we say that by reason of our dual form of government the accused has committed two offenses, one against each sovereignty, and consequently he is not punished twice for the same offense. This, however, is just saying that a second punishment in fact may be a first punishment in law. We find no difficulty in deciding that the relator, if put on trial a second time, cannot avail himself of the fact that he has discharged the judgment of the original trial.

\*     \*     \*     \*     \*     \*

"The suggestion of the defendants that the relator waived any right he might

otherwise have had to open up the original cause by paying the $10 fine and by serving the thirty days' imprisonment is not tenable. The defendants do not insist that the mere paying of the fine and the serving of the term constituted a waiver, but do insist that these acts, taken in connection with the fact that the court could have imposed a larger fine and a longer term of imprisonment, amounted to an acceptance of a benefit under the judgment and constituted a waiver. If the relator had accepted a remission of the fine, or a suspension of the part of the sentence imposing imprisonment, there would be merit in the defendants' contention. The cases cited by the defendants involve the acceptance of a benefit under the judgment in the sense of an actual mitigation of the penalty imposed by the judgment.

"This somewhat extended discussion of the legal effect of granting a writ [of error] *coram nobis* must not be understood as deciding, or even intimating, that the relator's petition entitles him to the writ and its attendant relief. We are deciding: (1) That the relator is entitled, as a matter of right, to file his petition in, and have the same passed on by, the criminal court of Lake County; and (2) that the writ of mandate will not be ineffectual and nugatory, in view of our preliminary conclusions: (a) that a new trial of the relator, if granted, will not present a moot case; (b) that the relator cannot, after obtaining a new trial by writ [of error] *coram nobis,* interpose a plea of former jeopardy, or former punishment; (c) that the criminal court of Lake County will not be without jurisdiction to retry the original cause; (d) that relator has not waived any right he may otherwise have to a retrial of the original cause by discharging the judgment in the original cause. * * *"

This is not a case where laches would apply.

Application overruled.